**Howard L. GIFFORD, Plaintiff,**

v.

**The CONGRESS, Defendant.**

**Civ. 5–78–249.**

United States District Court,
E. D. California.

June 6, 1978.

Howard L. Gifford, in pro. per.

MacBRIDE, Chief Judge.

## OPINION

This case, which is before the court on plaintiff's motion to proceed *in forma pauperis*, raises an interesting question of first impression concerning the proper scope of the unique judicial review procedure provided in 2 U.S.C. § 437h [1] for the consideration of constitutional attacks to the Federal Election Campaign Act. [2]

In a May 10, 1978 Memorandum, [3] this court granted plaintiff leave to proceed *in forma pauperis* and thereafter dismissed his complaint as frivolous. On May 15, 1978, plaintiff filed a new motion to proceed *in forma pauperis*, together with a new complaint. Plaintiff's new complaint, although in many respects materially different than the prior complaint, is sufficiently related to it that this court, in the interests of clarity and simplicity, will consider this new complaint as an amended complaint. [4]

The current complaint centers around the same two provisions of the Federal Election Campaign Act involved in this court's prior ruling. Specifically, these two provisions are 2 U.S.C. §§ 437h, 431(b). Section 431(b) provides:

"candidate" means an individual who seeks nomination for election, or election, to Federal office, whether or not such individual is elected, and, for purposes of this paragraph, an individual shall be deemed to seek nomination for election, or election, if he has (1) taken the action necessary under the law of a State to qualify himself for nomination for election, or election, to Federal office, or (2) received contributions or made expenditures, or has given his consent for any other person to receive contributions or make expenditures, with a view to bringing about his nomination for election, or election, to such office.

Plaintiff contends that § 431(b)(2) is unconstitutional. Essentially plaintiff's argument proceeds as follows. In its prior opinion, this court rejected plaintiff's claim that a person could qualify as a candidate, for purposes of being placed on the ballot, by satisfying the requirements of § 431(b)(2) as an alternative to § 431(b)(1). Hence, plaintiff concludes that § 431(b)(2) is unconstitutional, reasoning that Congress does not have the authority to regulate a campaign of a "private citizen" who is not

---

1. Section 437h provides:

   (a) The Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President of the United States may institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of this Act. The district court immediately shall certify all questions of constitutionality of this Act to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc.

   (b) Notwithstanding any other provision of law, any decision on a matter certified under subsection (a) of this section shall be reviewable by appeal directly to the Supreme Court of the United States. Such appeal shall be brought no later than 20 days after the decision of the court of appeals.

   (c) It shall be the duty of the court of appeals and of the Supreme Court of the United States to advance on the docket and to expedite to the greatest possible extent the disposition of any matter certified under subsection (a) of this section.

2. 2 U.S.C. §§ 431 *et seq.* The Federal Election Campaign Act of 1971, the Federal Election Campaign Act Amendments of 1974, and the Federal Election Campaign Act Amendments of 1976 are, respectively, Pub.L.92–225, Pub.L.93–443, and Pub.L.94–283.

3. The memorandum is included as Appendix A to this opinion.

4. This result is possible because the May 10 Memorandum did not specify whether the dismissal was with or without prejudice. Since the court has previously granted plaintiff leave to proceed *in forma pauperis* in this case, plaintiff's current request is superfluous.

*officially* a candidate.[5] Plaintiff seeks judicial review of the constitutionality of § 431(b)(2) pursuant to § 437h.

Because the current case is brought *in forma pauperis*, this court must consider the provisions of 28 U.S.C. § 1915(d) which provides:

> The court . . . may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

For the reasons that follow, this court determines that the plaintiff's complaint is frivolous and should be dismissed and that the constitutional question raised in the complaint need not be certified to the court of appeals sitting *en banc* pursuant to § 437h.

The term "frivolous" as used in § 1915(d) has been given various definitions by courts considering the question. In *Serna v. O'Donnell*, 70 F.R.D. 618 (W.D.Mo.1976), the court stated:

> A determination as to frivolity is a legal determination as to whether there "exists substantiality as to such a claim, of justiciable basis and of impressing reality".

*Id.*, at 621, *quoting Carey v. Settle*, 351 F.2d 483, 484–85 (8th Cir. 1965).

The court in *Clark v. Zimmerman*, 394 F.Supp. 1166, 1178 (M.D.Pa.1975), defined as frivolous "an action in which the plaintiff's realistic chances of success are slight." *See also State of Louisiana ex rel. Purkey v. Ciolino*, 393 F.Supp. 102 (E.D.La.1975); *Keno v. Doe*, 74 F.R.D. 587 (D.N.J.1977). The court in *Daves v. Scranton*, 66 F.R.D. 5, 7 (E.D.Pa.1975), held: "The judgment which I must make is whether the complaint states a claim which has a reasonable

probability of succeeding on the merits . . . ." Finally, in *Cochran v. Sielaff*, 405 F.Supp. 1126, 1128 (S.D.Ill.1976), the court determined: "The standard is whether any of the legal points made are fairly arguable on their merits." *See also Anders v. California*, 386 U.S. 738, 743, 87 S.Ct. 1396, 1399, 18 L.Ed.2d 493, 498 (1967).

Under any of the standards above stated, and despite viewing plaintiff's pro-per complaint in its most favorable light, this court concludes that the complaint is frivolous. As stated previously, plaintiff's constitutional claim is essentially that Congress has exceeded its authority when it extends its campaign regulations under the Federal Election Campaign Act to include unofficial candidates.

The power of Congress to regulate congressional elections is derived from Article I, § 4 of the United States Constitution:[6]

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

■ Moreover, the power of Congress to make election regulations governing national elections is augmented by the Necessary and Proper Clause, Art. I, § 8, cl. 18, which authorizes Congress "to make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." This provision leaves to the Congress the choice of means by which

---

5. For purposes of this opinion, the term "official candidate" will be used to denote a person described in 2 U.S.C. § 431(b)(1), and the term "unofficial candidate" will be used to denote a person described in 2 U.S.C. § 431(b)(2).

6. "Article I, § 4, was a compromise between those delegates to the Constitutional Convention who wanted the States to have final authority over the election of all state and federal officers and those who wanted Congress to make laws governing national elections. 2 J. Story, Commentaries on the Constitution of the

United States 280–292 (1st ed. 1833). The contemporary interpretation of this compromise reveals that those who favored national authority over national elections prevailed. Six States included in their resolutions of ratification the recommendation that a constitutional amendment be adopted to curtail the power of the Federal Government to regulate national elections. Such an amendment was never adopted." *Oregon v. Mitchell*, 400 U.S. 112, 119, 91 S.Ct. 260, 262, 27 L.Ed.2d 272, 278, n. 2 (1970) (per Black, J.).

its constitutional powers are to be carried into execution. *United States v. Classic,* 313 U.S. 299, 319, 61 S.Ct. 1031, 1039, 85 L.Ed. 1368, 1380 (1941). As Chief Justice Marshall stated in *M'Culloch v. Maryland,* 17 U.S. 316, 4 L.Ed. 579, 605 (1819):

> Let the end be legitimate; let it be within the scope of the constitution, and all means which are appropriate which are plainly adapted to that end which are not prohibited but consist with the letter and spirit of the constitution, are constitutional.

*See also, e. g., United States v. Classic, supra,* 313 U.S. at 319, 61 S.Ct. at 1031, 85 L.Ed. at 1380; *Oregon v. Mitchell, supra,* 400 U.S. at 119, 91 S.Ct. at 262, 27 L.Ed.2d at 279.

The tremendously broad scope of the power of Congress to regulate congressional elections under Art. I, § 4, was further articulated by Chief Justice Hughes in *Smiley v. Holm,* 285 U.S. 355, 366, 52 S.Ct. 397, 399, 76 L.Ed. 795, 800 (1932). Writing for a unanimous court, he stated:

> The subject-matter is the "times, places and manner of holding elections for senators and representatives." It cannot be doubted that these comprehensive words embrace authority to provide a complete code for congressional elections, not only as to times and places, but in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns; in short, to enact the numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved. . . .
>
> This view is confirmed by the second clause of article I, section 4, which provides that "the Congress may at any time by law make or alter such regulations," with the single exception stated. The phrase "such regulations" plainly refers to regulations of the same general char-

acter that the legislature of the State is authorized to prescribe with respect to congressional elections. In exercising this power, the Congress may supplement these state regulations or may substitute its own. . . . It "has general supervisory power over the whole subject."

The Power of Congress to regulate the conduct of Presidential and Vice-Presidential elections, although not based on Article I, § 4, appears equally broad:

> ■t is the prerogative of Congress to oversee the conduct of presidential and vice-presidential elections and to set the qualifications of voters for electors for those offices. It cannot be seriously contended that Congress has less power over the conduct of presidential elections than it has over congressional elections.

*Oregon v. Mitchell, supra,* 400 U.S. at 123, 91 S.Ct. at 264, 27 L.Ed.2d at 281; *accord, Buckley v. Valeo,* 424 U.S. 1, 13, 96 S.Ct. 612, 632, 46 L.Ed.2d 659, 684 n. 16 (1976); *Burroughs v. United States,* 290 U.S. 534, 543–546, 54 S.Ct. 287, 289–290, 78 L.Ed. 484, 488–90 (1934). *But see Oregon v. Mitchell,* 400 U.S. 112, 211, 91 S.Ct. 260, 308, 27 L.Ed.2d 272, 331 (Harlan, J., dissenting).

■ Given this broad sweeping power which has been granted to Congress by the Constitution as interpreted by the Supreme Court, plaintiff's sole constitutional claim that Congress does not have the authority to regulate the election campaigns of unofficial candidates, is substantially lacking in merit. The purpose of the Federal Election Campaign Act is clear. Congress sought to insure the integrity of the election process by regulating the critical aspects of campaigning and campaign funding, and by opening up the whole area to informed scrutiny by the electorate. To accept plaintiff's limited view of congressional authority would be to thwart the effectiveness of any election regulatory scheme. If the Act did not include unofficial candidates within its purview, an obvious and enormous loophole would exist.[7] Extending the reach of

---

7. For example, a candidate for office could postpone officially qualifying for office until a large amount of money had been raised—there-

by avoiding many of the Act's disclosure requirements.

campaign regulations to include unofficial candidates is an entirely appropriate use of congressional power in this area. Accordingly, this court finds that plaintiff's constitutional claim is frivolous.

■ In the instant case, merely determining that plaintiff's claim is frivolous does not entirely dispose of the issues raised by the complaint. This court faces the novel question of deciding the effect of 2 U.S.C. § 437h upon the case at bar. In the May 10 opinion, this court noted that plaintiff's reliance on § 437h was misplaced since plaintiff was not questioning the constitutionality of any of the provisions of the Act. May 10 Memorandum at 4, lines 22–27. Now, however, plaintiff specifically does attack § 431(b)(2) as being an unconstitutional extension of congressional authority. Consequently, this court must grapple with the second sentence of § 437h(a) and decide whether this constitutional question, which is of marginal if any merit, can be dismissed under 28 U.S.C. § 1915(d)—thus bypassing the certification procedure set out in § 437h. For the following reasons, this court holds that the extraordinary procedure set up in § 437h should not be utilized when the constitutional claim is frivolous.

Initially, it should be observed that the first sentence of § 437h(a) qualifies the "actions" that can be brought under § 437h by the phrase "as may be appropriate." The second sentence, however, is far reaching in its mandate: "The district court immediately shall certify *all* questions of constitutionality of this act . . . ." (emphasis added). The legislative history of § 437h, although limited, provides to this

court some guidance in the proper interpretation of the section.

Section 437h was part of the 1974 amendments to the Federal Election Campaign Act of 1971, and was an outgrowth of S. 3044 and its House counterpart, H.R.16090. As originally introduced in the Senate, S. 3044 did not include the special review procedure now set out in § 437h. This provision, in its original form, was introduced by Senator Buckley, without objection, and was accepted without a vote on April 10, 1974.[8]

When introducing the amendment, Senator Buckley stated that it

merely provides for the expeditious review of the constitutional questions I have raised. I am sure we will all agree that if, in fact, there is a *serious* question as to the constitutionality of this legislation, it is in the interest of everyone to have the question determined by the Supreme Court at the earliest possible time.

120 Cong.Rec. 10562 (1974) (emphasis added). Thus, Senator Buckley seemingly intended the amendment to encompass only "serious" questions as to the constitutionality of the legislation. Indeed, the constitutional questions to which Senator Buckley made mention during the Senate debate on S. 3044 all revolved around the First Amendment problems inherent in the expenditure limitations of the bill. *See* Cong. Rec.10558–64 (1974). Furthermore, while in Conference, the Buckley amendment (which was also included in H.R.16090) was modified to limit its scope. As originally worded, the amendment authorized "such actions in the appropriate District Court

---

**8.** The Buckley amendment read as follows:

Sec. 407. (a) The Federal Elections Commission, the national committee of any political party, and individuals eligible to vote for President are authorized to institute such actions, including actions for declaratory judgment or injunctive relief, as may be appropriate to implement or construe any provision of this Act or of Chapter 29 of title 18, United States Code. The district court shall immediately certify all questions of constitutionality of this Act to the United States court of appeals for that circuit, which shall hear the matter sitting en banc.

(b) Notwithstanding any other provision of law or rule any decision on a matter certified under subsection (a) shall be reviewable by appeal directly to the Supreme Court of the United States. Such appeal must be brought within 20 days of the court of appeals decision.

(c) It shall be the duty of the court of appeals and of the Supreme Court of the United States to advance on the docket and to expedite to the greatest possible extent the disposition of any question certified under subsection (a).

including actions for declaratory judgment or injunctive relief as may be appropriate *to implement or construe* any provision of this Act or of Chapter 29 of title 18, United States Code." (emphasis added). The amendment was modified and limited by the Conference Committee to authorize only those actions brought "*to construe the constitutionality* of any provision of this Act or of Sections 608, 610, 611, 613, 614, 615, 616, or 617 of title 18 United States Code."[9] Actions brought merely "to implement" the Act were eliminated, and actions "to construe" any provision of the Act were limited to those actions brought "to construe *the constitutionality*" of any provision of the Act. This modification, when considered along with Senator Buckley's comments, gives support to the position that Congress realized the novel nature of the review procedure it had established and wanted to *limit* the procedure, specifically to constitutional challenges, and only to *serious* constitutional questions.

The true meaning of the qualifier, "serious," is open to debate. It certainly can be strongly urged, however, that constitutional claims of marginal merit would be excluded from the reach of the statute.

Case law provides this court with some additional, yet non-conclusive, assistance in determining exactly which constitutional claims should be processed via the § 437h route. Unfortunately, there are only a handful of cases that have either discussed or utilized the § 437h procedure.[10] One of the leading cases is *Buckley v. Valeo, supra*.[11] In *Buckley*, the plaintiffs were four individuals (two of whom were Members of Congress, and one former Senator) and five organizations. The defendants were the Secretary of the United States Senate, the Clerk of the House of Representatives, the Comptroller General, the Attorney General and the Federal Election Commission. In their complaint the plaintiffs sought declaratory and injunctive relief against certain provisions of the Federal Election Campaign Act of 1971; the Federal Election Campaign Act Amendments of 1974; and Subtitle H of the Internal Revenue Code of 1954, and against their enforcement by the defendants. The grounds for the complaint were that the statutes deprived them of the right to petition for redress of grievances, of the right of privacy, and of due process of law, and that the statutes discriminated

**9.** On October 7, 1974, the Conference Report was filed with both the House and the Senate. The Report was accepted by the Senate on October 8 and by the House on October 10, 1974. The modified version of the Buckley amendment became law on October 15, 1974. Act of Oct. 15, 1974, Pub.L.No.93–443, tit. II, § 208(a), 88 Stat. 1285. The effective date of the section was January 1, 1975. *Id.* § 410(a), 88 Stat. 1304. The statute was renumbered and modified in 1976 to delete references to sections 608, 610, 611, and 613 through 617 of Title 18. Act of May 11, 1976, Pub.L.No.94–283, tit. I, §§ 105, 115(e), 90 Stat. 481, 496. These provisions of Title 18 were repealed by the same Act. *Id.,* tit. II, § 201(a), 90 Stat. 496. For additional description of the legislative history of § 437h, *see Buckley v. Valeo,* 387 F.Supp. 135, 138–41 (D.D.C.), *remanded en banc,* 171 U.S.App.D.C. 168, 519 F.2d 817, *on remand* 401 F.Supp. 1235 (D.D.C.) (three-judge court) *en banc decision on certified questions,* 171 U.S.App.D.C. 172, 519 F.2d 821 (1975), *aff'd in part* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

**10.** *Buckley v. Valeo, supra; Clark v. Valeo,* 182 U.S.App.D.C. 21, 559 F.2d 642 (1977); *United*

*States v. Clifford,* 409 F.Supp. 1070 (E.D.N.Y. 1976).

**11.** *Buckley v. Valeo* had a tangled procedural history. The district court certified the entire case to the court of appeals and denied the application for a three-judge court. 387 F.Supp. 135 (D.D.C.1975). The *en banc* court of appeals remanded for identification of the constitutional questions, fact-finding on those questions and certification of the constitutional questions so identified. In addition, the court suggested that a three-judge court be convened as to certain questions. 171 U.S.App.D.C. 168, 519 F.2d 817 (1975). A three-judge district court dismissed portions of the action, identified the constitutional questions, made findings of fact, and certified the constitutional questions to the court of appeals. 401 F.Supp. 1235 (D.D.C.1975). The court of appeals ruled on the certified questions, 171 U.S.App.D.C. 172, 519 F.2d 821 (1975), and that decision, as well as the decision of the three-judge court, was appealed to the Supreme Court. In early 1976, the Supreme Court affirmed the decision of the three-judge court in toto and affirmed the court of appeals' decision in part. 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

invidiously against them, all in violation of the First, Fourth, Fifth and Ninth Amendments to the Constitution. Further, the plaintiffs alleged that the mode of appointment and confirmation of members of the Federal Election Commission and its purported power to administer, interpret, make rules and to enforce said statutes violated the constitutional separation of powers. The suit was brought, *inter alia,* pursuant to § 437h. The district court, after tracing the legislative history of § 437h, defined its role in § 437h cases as follows:

> The foregoing dictates the conclusions that Congress contemplated that *any* constitutional challenge to any provision of the Act would be processed through the lower courts to the Supreme Court with a minimum delay, and that to obviate as much delay as possible, the only function of the District Court would be to screen the complaint for determination of whether *a* constitutional issue was raised and whether it was raised by persons having the statutory authority to do so.

*Buckley v. Valeo, supra,* 387 F.Supp. at 141 (emphasis added). On the following page of its opinion, however, the court qualified its previous statement:

> In light of the above, the Court holds . . . that [§ 437h] mandates that this Court must certify immediately to the Court of Appeals all *well-pleaded* con-

stitutional questions, without in the first instance making a determination as to such constitutionality . . . ."

*Id.* at 142 (emphasis added). Further, the district court goes on to *find specifically* that the plaintiffs had raised *"substantial"* constitutional questions. *Id.* The district court then certified the entire proceeding to the court of appeals pursuant to § 437h.

It is not apparent from the district court opinion in *Buckley,* why the court felt it necessary to make a specific finding that the constitutional questions in that case were "substantial." The opinion might be read as imposing a requirement that the constitutional questions certified under § 437h must be "substantial"; however, it is not clear that the issue was ever before the court. The *Buckley* opinion therefore offers some support for the position that dubious constitutional claims should not be certified under § 437h, but the case is far from conclusive.

Another opinion that discussed the reach of § 437h was *United States v. Clifford, supra.* The district court in *Clifford* denied the defendants' request to have the constitutional questions in that case certified under § 437h. The court's reasoning, although strained, clearly indicates an inclination to limit the class of claims that must be certified under § 437h.[12]

---

12. In *Clifford,* criminal prosecutions were brought against a number of defendants alleging a conspiracy to cause a national bank to make illegal campaign contributions. The defendants attacked the constitutionality of 18 U.S.C. § 610, based on the Supreme Court opinion in *Buckley v. Valeo.* The district court rejected defendants' constitutional arguments, and denied their request to invoke the § 437h procedure. The court, in effect, narrowly defined the word "action" in § 437h so that a criminal defendant's *motion* that attacked the constitutionality of a provision of the Act would not fall within the purview of § 437h. The court held:

> This court has given careful consideration to defendant Dowd's argument that the question of constitutionality should be certified to the U.S. Court of Appeals for the 2d Circuit pursuant to 2 U.S.C. § 437h. A review of the language of that section and its legislative history has convinced this court, however, that the provisions of the section are not applicable to

the case at bar. The Joint Explanatory Statement of the Committee on Conference, for this section states:

> *Conference substitute*
> The conference substitute generally follows the House amendment and makes it clear that these special judicial review provisions are available only for actions directed at determining the constitutionality of provisions of the Act and of provisions of title 18, United States Code, related to the activities regulated by the Act. 1974 U.S.Code Cong. & Admin.News, p. 5664.

The case at bar was not directed at determining the constitutionality of the Act. Rather this is a criminal action; the constitutional attack was raised by way of motion. There is no need for the expedited review provision of § 437h in a criminal action, since review may be had on appeal. Declaratory judgments regulate prospective actions; this criminal case deals with actions already taken. Accordingly,

In the recent case of *Clark v. Valeo, supra,* the District of Columbia Circuit, sitting *en banc,* faced a constitutional challenge to the Federal Election Campaign Act which was brought under § 437h. In *Clark,* the court held that the plaintiffs had not presented a "ripe justiciable case or controversy"; hence, the court returned the certified questions to the district court unanswered, and ordered the district court to dismiss the case. *Id.* 182 U.S.App.D.C. at 29, 559 F.2d at 650. In so holding, the court rejected the argument that the district court is *required* to make a finding that a case or controversy exists prior to making a certification under § 437h. Rather, the court framed the district court's responsibility as follows:

A District Judge requested to make certification under § 437h should be free to dismiss for want of jurisdiction, or to permit that question to be decided by this court *en banc,* much as a single judge asked to seek convening of a three-judge court under 28 U.S.C. § 2284 may determine threshold jurisdictional questions himself or herself, or call for such a court and allow that court to decide the matter.

*Id.* 182 U.S.App.D.C. at 25, 559 F.2d at 645–46 n. 2. Although in the instant case, this court does not, in the main, confront a jurisdictional question,[13] this language indicates that a district court, when faced with a constitutional challenge under § 437h, is not required to certify *all* claims automatically to the court of appeals, but may in its discretion examine the constitutional claim prior to certification. Judge Leventhal, in a separate concurring opinion in *Clark,* stressed that, despite the apparent manda-

tory language of § 437h, a court confronted by a constitutional challenge under § 437h should still utilize the same prudential considerations applicable to any suit seeking a declaratory judgment that a statute is unconstitutional:

The discretion granted by the Declaratory Judgment Act has not been vacated by 2 U.S.C. § 437h. Senator Buckley proposed § 437h as a measure to provide for expeditious review of fundamental constitutional objections he had raised to the core of the law. Section 437h achieves this objective by designating certain individuals and organizations as having an adequate interest to bring a constitutional challenge, by dropping the time required for district court determination and by expediting review in this court and in the Supreme Court. What § 437h contemplates is that whatever the Court's ruling, it be announced earlier rather than later. What was sought was expedition of a judicial ruling, not a change in ruling. If the "appropriate" disposition of a case under the Declaratory Judgment Act is prudential dismissal, rather than a ruling on the merits, that is still the appropriate disposition, with an expedited announcement. This approach is congruent with the history of § 437h . . . and with its text. . . .

The court will respect Congress's intent for expedition, but its course in proceeding toward disposition vel non calls for judicial discretion. The public interest in expedition is material, but § 437h does not terminate the court's discretion.

*Id.* 182 U.S.App.D.C. at 40, 559 F.2d at 661, 662 (footnotes omitted).[14]

---

there is no reason for certifying the question to the Court of Appeals.
*United States v. Clifford, supra* at 1072.

**13.** See note 15, *infra.*

**14.** Judge Robinson, in a separate dissenting opinion in *Clark,* took precisely the opposite position to that taken by Judge Leventhal:

Section 437h is both an endowment of exceptional judicial power and a command to use it in litigation attacking the constitutionality of any provision of the Act. The grant is coextensive with the constitutional maximum of adjudicative authority, observing no

limit save the existence of a case or controversy. The mandate to the judiciary is equally apparent: constitutional questions emerging are to be decided if only their determination is possible in the constitutional sense. Prudential considerations, so viable in ordinary cases, have no role in disputes cognizable under Section 437h. That is because Congress deemed those disputes extraordinary in terms of need for prompt resolution, and deserving of extraordinary treatment by the courts.
*Id.* 182 U.S.App.D.C. at 48, 559 F.2d at 669. See also *id.,* 182 U.S.App.D.C. at 56, 559 F.2d

Although this court does not currently face the "prudential considerations" issue discussed by Judge Leventhal, the underlying stated premise of Judge Leventhal's discussion, which is summed up in the following two sentences, applies with equal force to the instant case: "What § 437h contemplates is that whatever the Court's ruling, it be announced earlier rather than later. What was sought was expedition of a judicial ruling, not a change in ruling." Here, this court has determined that plaintiff's claim is of so little merit as to be frivolous. Pursuant to § 1915(d), this court would ordinarily dismiss plaintiff's complaint. There is nothing in the legislative history of § 437h nor in the case law interpreting the section that persuades this court that a different result should be reached in the instant case. On the contrary, if any conclusion can be drawn from the legislative history and the case law, such a conclusion would indicate that the result the court reaches today is the preferable one.

Furthermore, the court's holding is the only result that would appear to comport with the exercise of common sense and the wise use of judicial resources. The procedure established by § 437h is an extraordinary one. The court of appeals is called upon to consider a certified constitutional claim sitting en banc, instead of the usual panel hearing. Also, a direct appeal to the United States Supreme Court is provided. Without an initial district court screening of an in forma pauperis constitutional attack under § 437h to determine whether the claim is frivolous, the extraordinary § 437h procedure would be subject to clear abuse by litigants.

Accordingly, for the reasons stated above, the complaint is dismissed with prejudice on the ground that it is frivolous.[15]

IT IS SO ORDERED.

## APPENDIX A

### MEMORANDUM

This case comes before the court on plaintiff's renewed request to proceed in forma pauperis. On April 25, 1978, this court denied plaintiff's initial request to proceed in forma pauperis because plaintiff had failed to complete fully the in forma pauperis affidavit form submitted with his request. On April 27, 1978, plaintiff renewed his request and filed a fully complete affidavit form.

In his complaint, plaintiff alleges that he is "an uncertified candidate for the office of the House of Representatives, 4th Congressional District." (Complaint ¶ 2). Plaintiff alleges that defendant, Secretary of State, has improperly refused to place plaintiff's name on the June 1978 Primary Ballot. Specifically, plaintiff "seeks to certify the constitutionality of bona fide candidacy" under 2 U.S.C. §§ 431(b), 437h(a). 2 U.S.C. § 431(b) provides:

(b) "candidate" means an individual who seeks nomination for election, or election, to Federal office, whether or not such individual is elected, and, for purposes of this paragraph, an individual shall be deemed to seek nomination for election, or election, if he has (1) taken the action necessary under the law of a State to qualify himself for nomination for election, or election, to Federal office, or (2)

at 677 (conclusion of Judge Robinson's dissent); id. 182 U.S.App.D.C. at 69–73, 559 F.2d at 690–94 (MacKinnon, J., dissenting).

**15.** The court notes that in plaintiff's current complaint, there is no allegation that plaintiff is an "individual eligible to vote in any election for the office of President of the United States" which is a prerequisite for plaintiff to bring an individual suit under § 437h. This defect subjects the complaint to dismissal on the additional grounds of lack of standing and jurisdiction. The omitted allegation, however, appears to be one of mere oversight on plaintiff's part. In his first complaint filed in this case on May

10, plaintiff did allege that "he is registered with the Republican party and is eligible to vote in any election for the office of President of the United States." It is exceedingly doubtful that plaintiff's voter status has changed within the past month. Consequently, rather than merely disposing of the complaint on this narrow ground which could be, and no doubt would be, quickly corrected by amendment, in the interests of avoiding delay, this opinion addresses and resolves the additional problems present in the complaint even if the defect noted above were to be corrected.

received contributions or made expenditures, or has given his consent for any other person to receive contributions or make expenditures, with a view to bringing about his nomination for election, or election, to such office.

2 U.S.C. § 437h(a) provides:

(a) The Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President of the United States may institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of this Act. The district court immediately shall certify all questions of constitutionality of this Act to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc.

Plaintiff alleges that he "filed candidacy" with the California Secretary of State under § 431(b)(2), as an alternate to § 431(b)(1), and that the Secretary ruled in "a firm decision" that allowing a candidacy filing under § 431(b)(2) would be improper and illegal. This "firm decision" by the Secretary gives rise to plaintiff's attempt to "certify the constitutionality of bona fide candidacy" under § 437h.

### Request to proceed in forma pauperis

28 U.S.C. § 1915(a) provides in part: Any court of the United States may authorize the commencement, prosecution, or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress. . . .

In the instant case, plaintiff's second affidavit setting out his current financial status supports his statement that he is unable to afford the costs of suit. Accordingly, it is appropriate under § 1915(a) to grant plaintiff's request to proceed in forma pauperis. As stated by the court in Stiltner v. Rhay, 322 F.2d 314 (9th Cir. 1963), cert. denied, 376 U.S. 920, 84 S.Ct. 678, 11 L.Ed.2d 615 (1964):

we think there is merit to the suggestion of the Court of Appeals for the Tenth Circuit that, in most cases, the preferable procedure for the District Court to follow is to grant leave to proceed in forma pauperis if the requirements of 28 U.S. C.A. § 1915(a) are satisfied on the face of the papers submitted, and dismiss the proceeding under 28 U.S.C.A. § 1915(d) if the court thereafter discovers that the allegation of poverty is untrue or the action is frivolous or malicious. Oughton v. United States, 310 F.2d 803, 804 (10th Cir. 1962), and cases there cited. . . .

This procedure is more likely to result in the development of an adequate record. Id. at 317 (citations omitted).

### 28 U.S.C. § 1915(d)

Section 1915(d) provides in part that the court "may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." In determining what constitutes a frivolous action, the court is guided by the decision of Daves v. Scranton, 66 F.R.D. 5 (E.D.Pa. 1975). In Daves, the court stated:

The judgment which I must make is whether the complaint states a claim which has a reasonable probability of succeeding on the merits. . . . . In evaluating this complaint I must assess inter alia, the merit of plaintiff's legal theory, the credibility of his allegations, as well as the existence of possible defenses. . . . I must also assess the character of the allegations insofar as they indicate a motive on the part of the plaintiff to merely harass or vex the defendants rather than to seek redress for a legitimate legal claim. Id. at 7 (citations omitted).

Applying these standards to the case at bar, it is clear that plaintiff's complaint is frivolous. Plaintiff's legal theory, as set

812

out in the complaint, has no possibility of succeeding on the merits. First, the Act under which plaintiff brings his suit, 2 U.S.C. §§ 431 *et seq.*, does not pertain to the qualifications of candidates for office. Rather, these provisions deal with the manner in which a candidate's campaign should properly be conducted. The court notes the language of 2 U.S.C. § 453:

> The provisions of this Act, and of rules prescribed under this Act, supersede and preempt any provision of State law with respect to election to Federal office.

Despite the use of this broad-sweeping preemptive language, the legislative history of § 453 makes it clear that Congress did not intend to affect state laws dealing with candidate qualification:

> "It is clear that Federal law occupies the field with respect to reporting and disclosure of political contributions to and expenditures by Federal candidates and political committees, but does not affect State laws as to the manner of qualifying as a candidate, or the dates and places of elections."

Conference Rep. # 1237, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.Code Cong. & Admin.News pp. 5587, 5668 (Joint Explanatory Statement of the Committee of Conference). Second, the type of allegations which plaintiff makes here are not the type of allegations within the purview of § 437h. That section, by its express terms, deals with actions brought "to construe the constitutionality of any provisions of [the] Act." Plaintiff does not allege that any provisions of the Act are unconstitutional, hence § 437h is inapplicable.

For the above stated reasons, plaintiff's request to proceed *in forma pauperis* is granted, and the complaint is dismissed on the ground that it is frivolous.

IT IS SO ORDERED.

Dated May 9, 1978.