**Stewart Rawlings MOTT et al., Plaintiffs,**

v.

**FEDERAL ELECTION COMMISSION et al., Defendants.**

**Civ. A. No. 79–3375.**

United States District Court, District of Columbia.

June 30, 1980.

Daniel J. Popeo, Washington Legal Foundation, James Buckley Ostmann, Paul D. Kamenar, Washington, D. C., Joel M. Gora, American Civil Liberties Union, Arthur Eisenberg, New York Civil Liberties Union, New York City, for plaintiffs.

Charles N. Steele, Lawrence M. Noble, Deborah E. McFarland, Jeffrey H. Bowman, Fed. Election Comm., Washington, D. C., for defendants.

Roger M. Witten, Washington, D. C., for Common Cause as amicus curiae.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

Plaintiffs Stewart Mott, Patricia Stahlman, and the National Conservative Political Action Committee (NCPAC) have brought this suit for declaratory and injunctive relief against the Federal Election Commission (FEC) and its members. They allege that certain provisions of the Federal Election Campaign Act of 1971, as amended, (FECA), FEC regulations, and FEC advisory opinions and opinions letters are unconstitutionally overbroad and vague both on their face and as applied because they interfere with plaintiffs' ability to make certain contributions and independent expenditures.[1] Defendants have moved to dismiss on the grounds that some of the claims are not ripe for adjudication while others fail to state a claim upon which

---

1. Plaintiffs allege that the following sections of the Federal Election Campaign Act, as amended, are unconstitutionally overbroad or vague: 2 U.S.C. § 431(4) (formerly 431(d)) which defines "political committee"; section 431(8) (formerly 431(e)) which defines "contribution"; section 441a(a)(1)(C) which limits contributions to political committees (other than candidates and national party committees) to $5000 per year; section 441a(a)(2)(C) which limits a multicandidate committee's contributions to political committees (other than candidate or party committees) to $5000 per year; and section 441a(a)(3) which limits total contributions by an individual to $25,000 per year.

Plaintiffs allege the following regulations are similarly overbroad or vague: 11 C.F.R. § 110.-14 which defines a "single candidate committee"; section 110.1(d) which imposes limits on contributions to committees making independent expenditures; section 110.1(h) which regulates contributions to a committee supporting a candidate, if the contributor has already contributed directly to the candidate's committee; and section 110.2(a)(3) which restates the limitation set in 2 U.S.C. § 441a(a)(2)(C).

relief can be granted.[2] Common Cause, appearing as *amicus curiae*,[3] has also filed a brief urging dismissal. After weighing the arguments presented by the parties and *amicus*, the Court concludes that the complaint should be dismissed.

## BACKGROUND

Plaintiffs' claims flow from two types of contemplated activity. First, plaintiff Mott states that he wishes "to join with other like-minded individuals in purchasing . . advertising space" in the *New York Times* "in order to publicize his views," but that he fears the FEC will consider this joint endeavor to be a "political committee" under FECA and require it to register as such. In addition, Mott claims that the FEC will apply the amount spent in the joint purchase against the various dollar limits FECA imposes on contributions to political committees by an individual.

Plaintiff Stahlman alleges that she wishes to contribute more than the section 441a(a)(1)(C) limit of $5000 to NCPAC to enable that organization to make independent expenditures. She claims she has not done so because the FEC will interpret this to be a contribution in excess of the statutory limits, even though it is "earmarked for the purpose of NCPAC's making of independent expenditures"—the type of expenditure which under *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), cannot constitutionally be limited. In addition, Stahlman objects that these contributions to NCPAC would be counted against the $25,000 annual limit on contributions in section 441a(a)(3). Mott expresses a similar desire to contribute to a "single-issue" organization, but specifies neither the amount nor the recipient of his contemplated donation. Plaintiffs charge that the FECA provisions and FEC regulations proscribing these activities are unconstitutionally vague and overbroad, both as applied to these plaintiffs, and on their face, and ask that these challenges be certified to the en banc Court of Appeals pursuant to 2 U.S.C. § 437h.[4]

## ANALYSIS

Despite the mandatory phrasing of the certification provision, district courts presented with complaints brought under section 437h need not automatically certify every constitutional question raised to the en banc court of appeals. *See Martin Trac-*

---

**2.** In its motion, the FEC originally asked that all but two of plaintiffs' claims be dismissed and that the remaining two, the challenges to the $5000 limit on contributions to political committees and to the definition of "contribution," be prepared for certification to the Court of Appeals. At the hearing on the motion to dismiss, however, counsel for the FEC stated that the Commission had revised its assessment in light of recent developments and now believed that the entire case should be dismissed. Transcript of Hearing on Motion to Dismiss, June 20, 1980 (Transcript) 17–18.

**3.** Common Cause is a non-profit membership corporation with approximately 225,000 members which has participated actively in congressional consideration of the statutes challenged in this case and in numerous cases concerning the constitutionality and implementation of the federal election laws.

**4.** Plaintiffs seek certification under 2 U.S.C. § 437h which provides:
(a) The Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President may institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of this Act. The district court immediately shall certify all questions of constitutionality of this Act to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc.
Jurisdiction is also alleged under 28 U.S.C. § 1331.
There is some question as to whether plaintiff NCPAC has standing to invoke the certification provision in section 437h, since it is not among the categories of persons named in the statute. *See Martin Tractor v. FEC,* 627 F.2d 375, 378, n.6 (D.C.Cir. 1980). The Court need not decide this question, since NCPAC's claims are essentially the same as those presented by plaintiff Stahlman, who clearly has standing to raise them under section 437h.

*tor Company v. FEC*, 627 F.2d 375, *National Chamber Alliance for Politics v. FEC*, 627 F.2d 375, (D.C.Cir. 1980) (consolidated appeals hereinafter referred to as *Martin Tractor*) (unripe constitutional questions may be dismissed and need not be certified); *Gifford v. Congress*, 452 F.Supp. 802, 806 (E.D.Cal.1978) (frivolous constitutional questions may be dismissed without certification). The district court's role in a 437h case has been compared to that of a single judge presented with a motion to seek the convening of a three judge court to hear constitutional challenges. *See Clark v. Valeo*, 559 F.2d 642, 645–46 (D.C.Cir.) (en banc), *aff'd*, 431 U.S. 950, 97 S.Ct. 2667, 53 L.Ed.2d 267 (1977). Under the three judge court statutes, a single judge could dismiss constitutional claims which had already been decided, without convening the special panel. *Bailey v. Patterson*, 369 U.S. 31, 33, 82 S.Ct. 549, 551, 7 L.Ed.2d 512 (1962).

At least one district court has believed that a complaint must state "substantial" constitutional questions in order to invoke the certification process. The first court to be presented with a section 437h request observed that the case should be expedited "provided only that a substantial constitutional question is raised by a complaint and that complaint is filed by a party having standing to lodge it." *Buckley v. Valeo*, 387 F.Supp. 135, 138 (D.D.C.) *remanded*, 519 F.2d 817 (D.C.Cir.1975) (en banc). In remanding the Court of Appeals did not disturb the district court's express finding that "the plaintiffs raise substantial constitutional questions." 387 F.Supp. at 138. The Court of Appeals directed only that the district court specifically identify the questions presented and take whatever evidence was necessary to make findings of fact to

augment the record before certifying the identified questions. 519 F.2d at 818.

Judicial interpretation of the section 437h procedure thus suggests that this Court may initially review a complaint to determine if it presents a ripe and substantial constitutional controversy before certifying questions to the en banc court of appeals.[5]

The legislative history of the certification provision is not at odds with this interpretation. Section 437h was inserted into the Federal Election Campaign Act by an amendment offered by Senator Buckley to the Federal Election Campaign Act Amendments of 1974. Senator Buckley believed major portions of the 1974 legislation to be unconstitutional. *See* 120 Cong.Rec. 10557–62 (1974). Although unsuccessful in his efforts to have the offending provisions dropped from the bill, he managed to persuade his colleagues to include the expedited review procedure now embodied in section 437h. In explaining the purpose of his amendment he stated:

> It merely provides for the expeditious review of the constitutional questions I have raised. I am sure we will all agree that if, in fact, there is a serious question as to the constitutionality of this legislation, it is in the interest of everyone to have the question determined by the Supreme Court at the earliest possible time.

120 Cong.Rec. 10562. The amendment was accepted without debate and without objection. *Id.* at 10563. Arguably, Senator Buckley was concerned only with the expedited review of the sweeping changes contained in the 1974 Amendments.[6] In any event, it is apparent that he felt that the expedited procedure should be available only where a "serious" constitutional question was presented. Presumably other claims were to be screened out and dismissed by the district court. *See Gifford,*

---

5. As to whether a question is substantial or not, the Supreme Court has observed, again in the context of three judge court proceedings:

   The lack of substantiality in a federal question may appear either because it is so obviously without merit or because its unsoundness so clearly results from the previous decisions of this Court.

*California Water Service Co. v. City of Redding*, 304 U.S. 252, 255, 58 S.Ct. 865, 867, 82 L.Ed. 1323 (1938) (per curiam). *See Green v. Board of Elections*, 380 F.2d 445, 448 (2d Cir. 1967).

6. *See* Leventhal, *Courts and Political Thickets*, 77 Colum.L.Rev. 345, 385 (1977).

452 F.Supp. at 807, 810.[7] After reviewing the claims presented by the complaint in this case, the Court concludes that they should be dismissed.

■ The Court finds that those claims which derive from Mott's desire to purchase advertising space in the *New York Times* are not ripe for judicial decision. On the basis of the limited facts outlined in the complaint, the Court cannot determine whether Mott's joint purchase of advertising space would be covered by those sections of FECA regulating contributions to political committees. Mott insists that he can discern an FEC policy which indicates that the agency would consider his behavior to be covered by the Act. *Amicus*, however, argues that a straightforward application of the definitions of "contribution" and "political committee" places a "joint purchase" of advertising space beyond the reach of statute and regulations. Mott's statement of his claims aggravates this problem of interpretation. The allegation that Mott wishes to "join with others" is broad enough to encompass a spectrum of association from a single meeting of would-be advertisers at the *New York Times* where separate checks are tendered, to a full fledged political committee contemplating a series of advertisements and solicitations to support their activities. Plaintiff, however, has declined to be more specific.[8] Clearly, a federal court should not pass on constitutional questions in the absence of a more fully developed factual record. *See Martin Tractor*, at 387.

Mott's claims present another problem. Mott has asked the Court to determine if certain sections of the Act and regulations apply to him, and, if they do, certify certain constitutional questions presented by those provisions to the Court of Appeals. The first part of that request is misdirected. The Federal Election Campaign Act gives the FEC the power to issue advisory opinions on the application of the statute and regulations in specific situations. The Act was recently amended to make the advisory opinion process available to all "persons" and requires the Commission to respond within sixty days.[9] To date, the FEC has not rendered an opinion on the situation Mott appears to be advancing, and Mott has not requested one. Because such a ruling could dispose of the issues Mott presents, and because of the ripeness problems inherent in Mott's claims, the Court will dismiss this first aspect of the complaint. *See Martin Tractor*, at 388.

■ The second aspect of the complaint attacks the statutory and regulatory provisions which limit contributions to political committees purportedly made to enable those committees to make independent expenditures. This aspect involves primarily plaintiff Stahlman's claims. Stahlman asserts that she wishes to contribute more than $5,000 to NCPAC to enable that organization to make independent expenditures, but that she is prevented from doing so by the $5,000 limitation imposed by section 441a(a)(1)(C) and by the overall $25,000 limitation in section 441a(a)(3). Since under *Buckley v. Valeo*, 424 U.S. 1, 58–59, 96 S.Ct. 612, 653–654, 46 L.Ed.2d 659 (1976) there can be no limits on independent expenditures by a person or a political com-

---

7. Automatic certification of *all* constitutional questions to an en banc court of appeals could compound the difficulties inherent in en banc proceedings. *See* Leventhal, *supra* note 6, at 385.

8. *See* Transcript at 34–37.

9. Federal Election Campaign Act Amendments of 1979, Pub.L. No. 96–187, § 107 (January 8, 1980). Final Congressional action on this legislation was completed on December 20, 1979, three days after plaintiffs brought this action on December 17.

In support of their request to have the Court interpret FEC policy, plaintiffs rely on the Second Circuit's decision in *FEC v. Central Long Island Tax Reform Immediately Committee (CLITRIM)*, 616 F.2d 45 (2d Cir. 1980). *CLITRIM*, however, is distinguishable on the grounds that it involved constitutional challenges brought as defenses to an FEC enforcement action. There was no need for the Court to divine FEC policy on an indefinite set of facts; both the legal and factual background were well-established.

mittee, Stahlman argues that there can be no limit on what she styles as "donations" made to finance independent expenditures by political committees such as NCPAC.[10]

Stahlman's claims in essence present three identifiable constitutional questions which may be stated as follows:

(1) Whether the definition of "contribution" in section 431(8), is unconstitutionally overbroad or vague under the first and fifth amendments in that it applies to donations by a person to a political committee made for the purpose of enabling that committee to undertake independent expenditures?

(2) Whether section 441a(a)(3), which limits total contributions by an individual within any calendar year to $25,000 is unconstitutional under the first and fifth amendments?

(3) Whether section 441a(a)(1)(C), which limits contributions by a person to a political committee to $5,000 in any calendar year, is unconstitutional under the first and fifth amendments?

The *Buckley* decision answers each question in the negative. The $25,000 overall limit on contributions was specifically upheld as a "corollary of the basic individual contribution limitation" found to be constitutional. 424 U.S. at 38, 96 S.Ct. at 644. Moreover, in ruling on the constitutionality of the contribution limitations, the Court used and implicitly sustained the Act's definition of "contribution" which, the Court noted, included "dollars given to another person or organization that are earmarked for political purposes . . . ." 424 U.S. at 24 n.24, 96 S.Ct. at 637 n.24.

As to the third question, although the Court in *Buckley* did not specifically consider the $5,000 limit on contributions to political committees contained in section 441a(a)(1)(C),[11] the reasoning in the Supreme Court's per curiam opinion clearly indicates that the restriction is constitution-

al. In *Buckley*, the Court explained the rationale for sustaining contribution limits:

A restriction on the amount of money a person or group can spend on political communication during a campaign necessarily reduces the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached. This is because virtually every means of communicating ideas in today's mass society requires the expenditure of money. The distribution of the humblest handbill or leaflet entails printing, paper, and circulation costs. Speeches and rallies generally necessitate hiring a hall and publicizing the event. The electorate's increasing dependence on television, radio, and other mass media for news and information has made these expensive modes of communication indispensable instruments of effective political speech. . . .

By contrast with a limitation upon expenditures for political expression, a limitation upon the amount that any one person or group may contribute to a candidate or political committee entails only a marginal restriction upon the contributor's ability to engage in free communication. A contribution serves as a general expression of support for the candidate and his views, but does not communicate the underlying basis for the support. The quantity of communication by the contributor does not increase perceptibly with the size of his contribution, since the expression rests solely on the undifferentiated, symbolic act of contributing. At most, the size of the contribution provides a very rough index of the intensity of the contributor's support for the candidate. A limitation on the amount of money a person may give to a candidate or campaign organization thus involves little direct restraint on his political communication, for it permits the symbolic expression of support evidenced by a contribu-

---

10. Transcript at 51. Stahlman's contemplated transfer is nonetheless a "contribution" under 2 U.S.C. § 431(8) (formerly 431(e)).

11. This limitation was added after the Supreme Court's decision in *Buckley v. Valeo* by the Federal Election Campaign Act Amendments of 1976, Pub.L. 94–283, § 112, 90 Stat. 475, 486 (1976).

tion but does not in any way infringe the contributor's freedom to discuss candidates and issues. While contributions may result in political expression if spent by a candidate or an association to present views to the voters, the transformation of contributions into political debate involves speech by someone other than the contributor. (Footnotes omitted.)

*Id.* at 19–21, 96 S.Ct. at 634–636.

In short, a limitation on contributions infringes far less on first amendment freedoms than does a limitation on expenditures, because it involves restrictions on indirect rather than on direct expression. Whatever infringement does occur is justified by the compelling need to curb the "actuality and appearance of corruption" flowing from large individual contributions. *Id.* at 26, 96 S.Ct. at 638.

Plaintiffs point out that in *Buckley,* the Supreme Court had before it only limits on contributions to candidates and not contributions to "independent" political committees. According to plaintiffs the interest in limiting contributions to candidates—the limitation of the actuality or appearance of a *quid pro quo* for large political contributions—disappears when the contribution is made to a committee such as NCPAC. Plaintiffs conclude that limits on these contributions to fund independent expenditures thus abridge first amendment guarantees without the necessary justification.

Congress, however, felt otherwise. The Conference Committee Report on the Federal Election Campaign Act Amendments of 1976 explained the reasons for the limitation on contributions to non-candidate committees contained in 441a(a)(1):

[F]irst, these limits restrict the opportunity to circumvent the $1000 and $5000 limits on contributions to a candidate; second, these limits serve to assure that candidates' reports reveal the root source of the contributions that the candidate has received; and third, these limitations minimize the adverse impact on the statutory scheme caused by political committees that appear to be separate entities pursuing their own ends, but are actually a means for advancing a candidate's campaign.

H.R.Rep. No. 94–1057, 94th Cong., 2d Sess. 57–58 (1976), U.S.Code Cong. & Admin. News 1976, pp. 929, 973. As the first and third reasons cited in the report demonstrate, Congress was clearly concerned that the "independent" political committee might become a vehicle for avoiding the restrictions placed on direct contributions to candidates.

The en banc Ninth Circuit recently approved this rationale in *California Medical Association (CMA) v. FEC,* No. 79–4426, slip op. 4–13 (9th Cir. May 23, 1980) (en banc) (summarized at 48 L.W. 2828 (June 24, 1980)) when it sustained the $5,000 limit on contributions to political committees against a constitutional challenge brought pursuant to section 437h. The *CMA* court found *Buckley* controlling, and held that section 441a(a)(1)(C)'s $5,000 limit imposed a minimal and narrowly-drawn restriction on the plaintiff association's first amendment rights, and that this restriction was justified by the important governmental interest involved. Slip op. at 12–13. In a footnote, the Ninth Circuit discussed the impact of this particular contribution limit on free expression and found it comparatively slight; those who but for the limits would contribute large amounts to help finance independent expenditures by political committees are still free to spend as much as they wish on their own. Slip op. at 9 n.5.

In sustaining the $5,000 limit on contributions to political committees, *CMA* merely applies the *Buckley* rationale that transfers of money to enable another to speak are not entitled to the same deference as direct expenditures, and are consequently subject to reasonable regulation. These two authorities foreclose any challenge to the $5,000 contribution limits and require that plaintiff Stahlman's claims be dismissed along with plaintiff Mott's.